CHARLES H. CARTER
vs.
CHARLES B. CALVERT,
GEORGE H. CALVERT ET AL.

} DECEMBER TERM, 1851.

[ARBITRATION—AWARD.]

BY arbitration bonds executed in 1846 between complainant and the executor of G. C., it was recited, that complainant, in right of his wife, claimed to be entitled to certain portions of the estates "of the *father*, aunt, and other relations and ancestors" of the mother of his wife, which had come to the hands of said executor, and that the parties had mutually agreed to refer "all the *differences* between and among them, and *all said claims* as aforesaid" to arbitrators, "in order to avoid litigation," &c. A settlement had been made in 1836, between complainant and G. C., in his lifetime, in reference to the *paternal* succession of complainant's wife, which was *consummated by deeds* and other writings, and had ever since been *acquiesced in* and regarded by all parties as *final.* HELD—

That as there might have been, or the parties to the arbitration might have supposed there was, some portion of the *paternal* succession which had come to the hands of the executor, besides that embraced in the settlement of 1836, the arbitrators transcended their power in disturbing that settlement.

The award found a certain sum due by G. C. at his death to complainant, and that "payments to a considerable amount had been made by" the executor "on account thereof" since the death of said G. C., "for which he is entitled to credit thereon," and then awarded "that a fair account be taken between the parties of the balance due, if any," without stating by whom the account was to be taken, or within what time, or upon what principles. HELD— That the award was void because it did not make a final determination of all the matters submitted.

The reservation of a future power by the arbitrators in their award, if it affect the whole of the award, will render it totally void, because the award itself should close up all matters submitted.

But the reservation of a mere ministerial act, such as an arithmetical calculation, and not a judicial question, will not have the effect to vitiate the award.

---

[The bill in this case was filed by the complainant on the 1st day of February, 1849.

It states that in 1799, George Calvert married Rosalie Eugenia Steer, daughter of Henry Joseph Steer, of Antwerp, and had by her five children who survived their mother. That prior to and in contemplation of said marriage, a marriage settlement was made, dated the 8th of June, 1799. That Henry Joseph

Steer and his daughter Rosalie died in 1821. That George Calvert died in 1838, and the defendant, Charles B. Calvert, is his executor. That on the 11th of November, 1830, complainant married Rosalie Eugenia Calvert, one of the children of the above marriage, by whom he has issue, who are made defendants. That on the 13th of January, 1832, complainant and his wife, in furtherance of an antenuptial agreement between them, conveyed to B. M. Caton and George H. Calvert all the estate to which his wife was entitled at the time of her marriage under the will of her grandfather, Henry Joseph Steer, and certain other estate to which she would be entitled on the death of her father, by virtue of the marriage settlement above referred to, between her father and mother, with certain other property and all other moneys and other property which she might thereafter inherit or take by devise from her relatives in trust for the sole and separate use of the wife during her life, and after her death to such uses as she might appoint ; and that on the 21st of July, 1840, by a decree of this court, the said trustees were removed, and Charles B. Calvert and Robert E. Lee were appointed in their stead.

That on the 12th of November, 1836, by deed of that date between George Calvert of the first part, complainant and wife of the second part, and George H. Calvert and Robert E. Lee of the third part, the said George Calvert conveyed to the parties of the third part a tract of land called "Godwood," and forty-two slaves, in trust for complainant's wife, and the same were, with his consent, accepted by his wife in liquidation and satisfaction of certain money and effects in the hands of said George Calvert due and owing to complainant's wife, and that the possession of said land and slaves had long previous to the execution of said deed been delivered to his wife, and that since that time they have held the possession conformably thereto, and that in fact the debt so liquidated and satisfied was due and owing to his wife by her said father on account of certain moneys and effects received by him on her account from the executors of her maternal grandfather, and that the statement of the amount of said debt made by the said George Calvert

was acquiesced in without any particular examination thereof because of the near relation of the parties, and the confidence reposed by a daughter in her father, and the same was never at any time afterwards questioned by complainant, or his wife, or her father.

That said George Calvert, in virtue of the marriage settlement between him and his wife, and as surviving husband, became possessed of a large amount of money and effects upon the division of the estate of the mother of his said wife, which he was entitled to hold for life only, and which after his death was to be accounted for and distributed amongst his children by his said wife, and in order to secure said money and effects to his children, to be paid after his death, he did, on the 11th of November, 1837, by deed of that date, convey to his sons, George H. and Charles B. Calvert, certain real and personal property upon trust, that if he, before his death, or his legal representatives in due time thereafter, should not well and truly account, pay and satisfy to his said children their respective shares of the estate of their maternal grandmother for which he was liable, then the grantees might sell the same and pay to complainant's wife for her separate use, or to the trustee named in the marriage settlement between her and complainant, every such sum or sums of money, stocks, security, property and effects as might be then due and coming to her in the premises, and complainant charges that the moneys and effects of his wife's maternal grandmother which came to the possession of said George Calvert, amounted to $100,000 and upwards, and that he has no means of ascertaining the amount and value accurately, but said George H. and Charles B. Calvert, or one of them, have full knowledge of the subject, and can state the amount and value, and what said effects were, and have also copies of the marriage settlement referred to in said deed, and he further charges that said George Calvert did not in his lifetime, and his representatives since his death have not, nor have the trustees in said deed, accounted with, or paid to complainant's wife, or her trustees, her share of the moneys and effects of her maternal grandmother, which so as aforesaid came to the posses-

sion of her father, in consequence of a difference between complainant and said Charles B. Calvert as to the amount and value of said share.

That complainant's wife died on the 10th of January, 1845, leaving seven children, (who are named,) all minors, and that before her death she duly executed her will or appointment, by which she devised all her estate, including that vested in the trustees named in her marriage settlement, to complainant for life, with remainder in fee to her children, with power to complainant to make distribution among her children, as he might think just. That the trustees in the deed of the 11th of November, 1837, are, by the terms and true construction thereof, bound, but have failed, to raise, pay over and deliver to the trustees in the marriage settlement between complainant and his wife, her share of the moneys and effects of her maternal grandmother, to be disposed of according to the terms of her will or appointment.

The bill then makes the said children of complainant, and Robert E. Lee, Charles B. and George H. Calvert, defendants, and prays for a discovery of the marriage settlement between George Calvert and his wife, for an account of the moneys and effects of the maternal grandmother of complainant's wife, which, under said settlement and as surviving husband, came to the possession of said George Calvert for his lifetime, and which his representatives are bound to restore undiminished, or the value thereof, to his children ; that the trustee, in the marriage settlement between complainant and wife may be decreed to be entitled to her share of the said moneys and effects of her maternal grandmother, to be by them disposed of in conformity with her said will or appointment, and that the property covered by the deed of trust of the 11th of November, 1837, be sold for the payment of said share, or the value and amount thereof, and for further relief.

The answer of Charles B. Calvert, which was adopted by his co-defendant, George H. Calvert, admits the marriage of his parents, and of his sister to the complainant, and the issue thereof, and their survivorship as stated in the bill, that a mar-

riage settlement was made by his parents, the death of Henry Joseph Steer and wife in 1821, and the death of his father in 1838, leaving a will, of which he is the executor. It also admits the conveyance by complainant and wife after their marriage, to B. M. Carter and George H. Calvert, of certain property in trust as appears thereby, and that defendant and Robert E. Lee were afterwards, by decree of this court, appointed trustees to execute the trusts of said conveyance in place of those named therein.

It also admits the conveyance of the 12th of November, 1836, by George Calvert to B. M. Carter, and George H. Calvert in trust for complainant's wife, but denies that it was made by the grantor, or was by complainant and his wife, or either of them, accepted and received exclusively in liquidation and satisfaction of any money or effects in the hands of the grantor for or belonging to the said wife, and then payable by him to her, or on her account, or any claim in certain of said wife against the said grantor. On the contrary, defendant is informed and believes that said conveyance was made by the said George Calvert, and accepted by the complainant and wife as payment or satisfaction primarily of their claims against him for money which was then payable by him to them, and also on account of all claims which they might thereafter have against him for moneys which might thereafter come into his hands and for which he or his estate might thereafter become liable to them. He admits possession of the land and negroes by complainant and wife prior to the date of the conveyance, and that they have retained possession since, and that in view of this conveyance some statement or estimate was made of the probable extent of the claims of complainant and wife against the said George Calvert for moneys then payable by him to her, but he denies that such statement or estimate was correct in fact, or was carefully taken, or designed by the parties to be conclusive, since it was understood that at a future day complainant and wife would have further claims against the said George Calvert or his estate, at which time any error might be corrected, and he admits that said statement was not particularly examined by the complainant, or

admitted to be correct by him, but on the contrary he avers that complainant admitted the said statement or estimate was not a conclusive settlement as is now pretended.

He admits that said George Calvert, in virtue of the marriage settlement between him and his wife, and as surviving husband, became possessed of moneys and effects of considerable value which he was entitled to retain and enjoy during his life, but which after his death were to belong to and be distributed amongst his children, and that on the 11th of November, 1837, he conveyed to said Charles B. and George H. Calvert certain property in trust to provide thereout for payment of the claims of his children against him as therein stated. He also admits the death of complainant's wife as stated in the bill, and that she left children who are correctly named therein, and also a last will whereby all her estate is devised to complainant for life, with remainder to her children.

He denies that he ever refused to account with the complainant for the claims of his wife, which were intended to be provided for by the deed of trust from said George Calvert to George H. Calvert and defendant. On the contrary, being in possession of the trust estates, and having engaged with his brother, the said George H. Calvert, to provide for any claims of the complainant against their deceased father, he did from time to time make large payments to complainants on account, and so soon as it was discovered that said claims involved important and difficult questions, it was agreed by and between the complainant acting for himself and children, and the defendant for himself and brother, that all claims and demands of the complainant and his children against the said George Calvert, deceased, should be left to the friendly arbitrament and award of Richard S. Coxe and Joseph H. Bradley, with power to them, in case of disagreement, to appoint an umpire, and accordingly, on the 28th of July, 1846, complainant gave to defendant his bond to stand by the award to be made as aforesaid. He avers that complainant proposed said reference, and procured said bond, to be prepared by his own counsel in such form as to refer all questions arising as well out of the paternal as maternal

successions, and he relies on this bond so prepared as demonstrating most clearly that at the time of said reference the complainant did not suppose the conveyance aforesaid was designed as a full and complete settlement and satisfaction of any one or other of the claims of complainant and wife as is now pretended.

He further avers, that on the 20th of January, 1848, the said arbitrators, with George M. Bibb, the umpire selected by them, made their award, after due consideration of all the pretensions and proofs of the parties, and thereby awarded that the said George Calvert, at the time of his death, on the 28th of January, 1838, was indebted unto complainant's late wife in the sum of $8039 51, and that from the said sum there should be deducted the sums which had been paid on account to complainant by defendant since the death of the said George Calvert, and he avers that the statement C. B. C., No. 4., filed with the answer, contains an accurate account of the payment made to complainant prior, and up to, the time of its preparation, and that the original was prepared and laid before the arbitrators anterior to the date of their award, and with the knowledge and consent of the complainant, and for the purpose of said reference, and that to ascertain the precise sum now to be paid to complainant by defendant, it was only necessary to discount from the sum so awarded, with interest, the several sums shown by said exhibit to have been paid by defendant. But he avers, that after preparing the original of said exhibit, he has paid to complainant further sums amounting to $810 15, and he insists that the balance which may remain after making all such deductions is all that is now due from defendant as representing his deceased father, and from his father's estate to the complainant and other representatives of his said wife, and pleads and relies upon said award as a full answer and bar to all the relief prayed by the bill. He avers, that this award was made after a patient examination and consideration by the arbitrators of the allegations and proofs laid before them by the parties, and defendant believes it truly and correctly states the amount due from the said George Calvert, deceased, at the time of his death,

17*

to complainant's late wife, and he, as one of the trustees appointed by this court, in behalf of complainant and his children, is inclined to adopt said award as a final adjustment of all claims and demands as aforesaid, and he further avers, that after the award was made, complainant requested defendant to make out a statement of the balance due him agreeably to the award, which he did, but complainant then declined submitting to the award, and defendant was, therefore, unable to comply with his part by payment of the balance due as aforesaid. And since that time he has been advised that as complainant is entitled to no more than a life estate in the sum so awarded, it ought to have been retained and invested by said defendant and his co-trustee, under the direction of this court, and that complainant ought now to be required to pay over to defendant and his co-trustee the moneys so paid by defendant, to be invested as aforeaaid.

He further avers, that exhibit C. B. C., No. 3, filed as part of his answer, is a copy of a statement prepared by him, and laid before the arbitrators as exhibiting correctly the payments made by said George Calvert in his lifetime, to complainant and his wife; that this statement was examined by complainant, and by him admitted to be correct, and was used by the arbitrators in making up their award. That complainant and his wife are therein charged in account with the land and negroes before mentioned, at certain conventional prices, which form parcels of the aggregate claimed to have been paid and advanced as aforesaid, by the said George Calvert in his lifetime, and that the only objection made by complainant before the award was made up, was the item for 160 acres of land therein charged, at the price of $35 per acre, whereas the complainant insisted the charge should have been at the rate of $30 per acre, and no more, and, therefore, a memorandum was made at the foot of the statement by, or at the instance of complainant, "deduct 160 acres at $5," the object of which was to advertise the arbitrators that to the extent of said deduction claimed, but no further, the said statement was controverted. That it was further agreed between the complainant and him-

self that said item should be withdrawn from the consideration of the arbitrators and adjusted between the parties, and the arbitrators in consequence of such agreement, in making up their award gave complainant the benefit of the deduction. That after the award had been settled, and made known to the parties, but before the parts had been delivered, the complainant insisted that said land and negroes had been taken in satisfaction of a certain claim against the said George Calvert for moneys at that time in his hands, and which he was then bound to pay over, and that the award was wrong in bringing the value of said land and negroes into the account, with the claim which was intended to be liquidated thereby, to which it was answered by the said arbitrators, or one of them, that the bond of submission expressly declared that all claims on account of the paternal succession were submitted to the decision of the arbitrators, and that the said statement, with the privity and consent of the complainant, had been laid before the arbitrators as a true state of credits to which the defendant would be entitled on account. But that, at his instance, the parts of the award would be retained to enable complainant to exhibit proof of his assertion that said land and negroes had been given in satisfaction of the aforesaid claim, and not on account simply; that no such proof was offered, and after the lapse of the time prescribed, the parts of the award were delivered, and, therefore, defendant insists, that upon all the circumstances, the complainant ought to be concluded by said award.

He further avers, that he has always been, and is now, ready and willing to settle and adjust the said reserved item, and he insists that he is entitled to a further allowance for the said sum so reserved as a further deduction from the amount awarded against him. He submits to account with complainant and his children on the basis of the award, and to bring in, or invest, or apply under the direction of the court, the residue of the money awarded against him, after taking proper allowances for the payments made by him, and for the said disputed item, and he prays that the complainant may be required to bring into court the sums erroneously paid him by defendant as aforesaid,

to be invested and secured under the direction of this court, and that the award may be established, as well against the complainant, as his children, and their trustees.

The arbitration bonds were filed as exhibits with the answer, and their recitals are fully set out in the opinion of the Chancellor. The award made by the arbitrators and George M. Bibb, the umpire selected by them, on the 20th of January, 1848, after reciting the submission, makes the award set out in the opinion of the Chancellor.

There was also filed with the answer exhibits C. B. C., Nos. 3 and 4, the first being a statement of payments made to complainant and wife by George Calvert in his lifetime, with the memorandum at the foot, "deduct 160 acres at $5," referred to in the answer, the second a statement of payments made by Charles B. Calvert, executor of George Calvert, to the same parties.

The answer of the infant defendants was taken by guardian, *ad litem*, not admitting the allegations of the bill, and asking the court to protect their interests. The answers of the other parties are immaterial.

A large mass of testimony, both oral and documentary, was then taken, the substance of which is stated in the Chancellor's opinion. It may be proper, however, to add, that the settlement in reference to the paternal succession referred to in the proof of R. H. Stewart, and in the opinion of the Chancellor, was made in 1835, the amount due being ascertained by Walter Jones, Esq. and Charles B. Calvert, acting as agent for his father, and if this settlement had not been disturbed by the award the amount which the arbitrators would have adjudged as due the complainant would have been $12,037 54, as of the 12th of January, 1838. It was further proved by one of the arbitrators that they never gave notice to the parties of the time and place of any of their meetings.]

THE CHANCELLOR:

Whatever may be said of several of the questions raised and and discussed by the counsel on both sides in this case with so

much ability, there can, I think, be no reasonable doubt that the settlement between the elder Mr. Calvert, and his daughters, Mrs. Carter and Mrs. Stuart, made in the year 1836, was intended to be, and was considered on all hands, as a full and final adjustment of all the claims of the daughters against their father for, or in respect of, moneys and property which had come to his hands from the executors of their maternal grandfather. The evidence on this point, both documentary and oral, is too conclusive to be susceptible of misapprehension, and I am quite satisfied that when, in 1846, it was agreed to refer to Messrs. Coxe & Bradley certain matters then in difference between Messrs. Carter and Stuart and Mr. Charles B. Calvert, as the legal representative of his father, George Calvert, then deceased, it was not the understanding of the two first named gentlemen, that the settlement of 1836, was one of the subjects to be submitted to the arbitrators. And in truth the evidence shows very clearly that Mr. Charles B. Calvert himself, regarded the settlement in question final until the execution of the arbitration bond, which, as he stated to Dr. Stuart, "he thought opened the whole question as to the first claims as well as to the last, that is, those which were due by his father before his death, and which were included in the settlement of 1836, as well as those which became due after his death."

That Mr. Charles B. Calvert, at the time of the execution of the arbitration bond, was under the impression that the subjects of the paternal, as well as maternal, successions were to be submitted to, and would be examined by, the arbitrators; there can, therefore, be no doubt, but it is equally apparent, that he formed this impression not from any understanding, agreement or negotiation between himself and the opposite parties prior to the execution of the bonds, but from the terms of the bonds themselves, which he thought opened both questions, and required the arbitrators to re-examine and correct, if found to be erroneous, the settlement of 1836. This, of course, was the impression of Mr. Charles B. Calvert, but there is not, in my opinion, the slightest ground for supposing that the other parties to the submission entertained similar views. Certainly

there is nothing in the evidence of Mr. Bradley, when he speaks of the conversation between himself and Mr. Carter, which can lead us to suppose that the latter objected to the right of the arbitrators to go behind the settlement, because he had ascertained, or apprehended, that the result of a re-examination of the questions then adjusted would be disadvantageous to him. On the contrary, Mr. Bradley distinctly states, that he declined to let Carter know the result of the arbitration, though he requested him to do so. Why Mr. Carter asked the witness if they had gone into the question of the paternal succession it is impossible to ascertain with certainty. We may speculate upon this subject as we please, but whatever his motive was, it seems to me, a constrained and unnatural conjecture to attribute his remark, that the arbitrators had no right to examine into that question to a conviction, or even an apprehension, that he could suffer by their doing so.

If, as the argument assumes, Carter consented by the submission that the accounts upon which the settlement of 1836 was made should be raveled into because he had reason to think a re-examination would result favorably to him, why should he, before the result was known, protest against the power of the arbitrators to do so? There is nothing to show that, from the period of the submission to the date of his conversation with Mr. Bradley, any thing had come to his knowledge in reference to the probable result of a reinvestigation of the old settlement, which would induce him to retract his consent to such reinvestigation after he had once consented to it.

There is, moreover, no reason, that I can conceive, why the settlement of 1836 should be brought in question between these parties, and the matters which were then supposed, all round, to be finally adjusted, laid before these arbitrators for their examination. The settlement was certainly made under circumstances calculated to remove all doubt or suspicion of its perfect fairness.

The amount ascertained by it to be due from the late Mr. Calvert to his daughters, was determined by an eminent legal gentleman, acting by the appointment of, and as the mutual

and trusted freind of the parties, and the property taken by his daughters, in full satisfaction of the claim, was appraised by mutual friends, or its value otherwise fixed, so as to ensure entire and full justice of all parties. And Mr. Carter and his wife, in pursuance of the agreement to that effect, upon receiving a conveyance of the property agreed to be taken in satisfaction of their claim, had actually released and exonerated Mr. Calvert fully and finally therefrom.

This final and full settlement of the claims of Mrs. Carter upon her father, founded upon rights under the paternal succession, was consummated by the deed of the 12th of November, 1836, in which all the necessary parties united, and from that day down to the date of the arbitration bonds on the 28th of July, 1846, no one ever thought the subject would ever again be agitated. Mr. and Mrs. Carter had been in the actual possession of the property thus conveyed in satisfaction of this claim from a period anterior to the deed, continued in possession thereafter, and Mr. Carter is now in possession thereof, claiming title thereto in virtue of rights conferred by that deed. No complaint has even to this day been heard, and the parties, father and daughter, and those who have succeeded them remained under the impression, as well they might, that this matter was closed forever.

There is a reason of great force, as it appears to me, why Mr. Carter should not have ventured to open a question which had thus been closed in the lifetime of his wife, who died in the year 1845, and who certainly died under the impression that that subject at least would never be disturbed. Mrs. Carter had by her will executed the power conferred upon her by the deed of the 12th of November, 1836, and had, in pursuance of said power, given her husband a life estate in the property embraced in said deed, with remainder in fee to her children, with power to the father to make such distribution among her children as he might think just. Now, it appears to me it would have been eminently injudicious, not to say improper, in Mr. Carter to do any act which could by possibility, in any of its consequences, affect the title of his wife to the property thus disposed of by her will. Suppose these arbitrators, Messrs. Coxe and Bradley,

had ascertained nothing was due Mrs. Carter on account of the paternal succession, or no more was due from the deceased, Mr. Calvert, on that account than he had paid in money, would not such an award have been calculated to shake the title conveyed by the deed of November, 1836, or at all events, would it not so far as Mr. Carter is concerned, have thrown doubts upon his title as resulting from that deed ? The reference of this question could not, to be sure, have impaired the rights of the children of Mr. Carter, who were minors and no parties to the submission, but it certainly seems to me by no means a clear proposition that if Mr. Carter had agreed to open the settlement, and that the arbitrators should re-examine the question, and they had come to the conclusion that no consideration was given for the deed, that his rights under it as derived from the will of his wife could not have been affected.

Certainly it is to be presumed Mr. Carter would have felt much reluctance to submit to the contingency of a new arbitration, a subject which had been thus solemnly settled in the lifetime of his wife, in the confidence of the final character of which she had made her will, and had gone to her grave.

There is moreover another reason entitled, in my judgment, to much consideration in determining the intention of the parties to this reference. Mr. Calvert the elder died early in the year of 1838, but on the 11th day of November, 1837, he executed to his sons, George H. and Charles B. Calvert, a deed of his real and personal estate in trust to secure to the grantees the sums due from him to them on account of their maternal grandfather, and also to secure his said sons and his daughters the sums which would be due them upon his death, and which he had received from their maternal grandmother. This deed was, of course, executed by the grantor, and received by the grantees, under the impression that the paternal succession of the daughters had already been accounted for and paid by Mr. Calvert, for it makes no provision for their payment in respect thereof, and it may perhaps well be doubted whether the trustees acting under that deed would have been perfectly justified in doing any act which would revive this claim or subject the

trust property to its payment, and yet if that claim had been submitted to the arbitrators, and they had awarded that more was due Mrs. Carter than she received under the settlement of 1836, it would be unjust to exclude her from the security of the property conveyed by the deed. The evidence relied upon by the defendant to show that Carter did agree, and expected that the settlement of 1836 should be opened, I do not think sufficient to overthrow the strong presumptions and positive proof the other way. The proof principally relied upon is found in the paper C. B. C., No. 3, and the evidence showing a correction by Carter of one of the items in the account written upon that paper. The account professes to be an account of moneys and property paid to, and charged against Mr. and Mrs. Carter, by George Calvert in his lifetime, commencing in June, 1833, and terminating in January, 1836. The charges amount in the aggregate to $40,011 92. One of the items is a charge for one hundred and sixty acres of land described as "Allen's Purchase," at $35 per acre, amounting to $5600. The property and money embraced in this account was the consideration of the deed of the 12th of November, 1836, and the evidence shows that Mr. Carter corrected the account by deducting for one hundred and sixty acres at $5 per acre, thereby reducing the sum of the debits to $39,211 92, and this, it is strongly urged, is a recognition of the right of the arbitrators to ravel into and readjust the settlement of 1836, which resulted in, and was consummated by the execution of the deed of that date.

It does not appear to me, however, that this act can or ought to have the effect imputed to it. I cannot bring myself to think that if Mr. Carter had supposed that the settlement of 1836 was to be disturbed, and the arbitrators were to enter into an examination of the accounts upon which it was founded, that he would have contented himself with simply correcting a single item in the account. The account which was furnished by the defendant does not give the credits. It is simply a statement of the charges made by the late Mr. George Calvert against Mr. Charles H. Carter and his wife, and it is extremely difficult to conceive that if the latter gentleman had supposed that the

old settlement was to be ripped up, and the whole question re-examined, he would have been satisfied with correcting a single item in the statement of charges. He did not know, nor could he have known, what evidence was before the arbitrators, or upon what grounds they would proceed in determining the indebtedness of Mr. Calvert, growing out of the paternal succession of his wife, and when we consider how vitally important the question was to him and his children, it requires no little amount of credulity to believe that he would have made no inquiry upon the subject, but have left the arbitrators to decide the whole matter upon evidence of which he was entirely ignorant.

But it is insisted upon the part of the defendant, Mr. Charles B. Calvert, that by the express terms of the submission in this case, the paternal as well as the maternal succession of Mrs. Carter was referred to the arbitrators, and that all reasoning upon the subject founded upon probabilities and conjecture is unavailing. The agreement to submit, is to be found in bonds interchangeably executed and delivered by the parties each to the other. The bonds recite that "whereas the said Charles H. Carter and R. H. Stuart, in right of their respective wives, daughters of George Calvert and Rosalie Eugenia Calvert, deceased, and the children of the said Charles H. Carter, by virtue of the last will and testament of their mother, claim to be entitled to certain portions of the estates of the said George Calvert and Rosalie Eugenia Calvert, and of the father, aunt, and other relations and ancestors of the said Rosalie Eugenia, which estates have come to the hands of the said Charles B. Calvert, as the legal representative of his said father, George Calvert, deceased, and whereas the said parties have mutually agreed that all the differences between and among them, and all said claims as aforesaid, shall be left to the friendly arbitrament and decision, according to the principles of law and equity, of persons mutually to be chosen by them in order to avoid litigation," &c., and the parties, in the penalty of thirty thousand dollars, bind themselves respectively each to the other to abide by and perform the award of the arbitrators.

It is urged here that the terms "father, aunt, and other rela-

tions and ancestors of the said Rosalie Eugenia," who was the mother of Mrs. Carter, the right is expressly conferred upon the arbitrators to adjudicate both the paternal and maternal successions, and this presents, as it seems to me, the only difficulty in the case.

It is contended that if the paternal succession was not intended to be submitted, why was the word "father" introduced in the contract, and there would be great difficulty in answering this argument if there was no subject upon which that term could operate but that portion of the paternal succession which had been settled in the year 1836. But Mr. George Calvert lived until the year 1838, and it may have happened, or at any rate it might have been supposed that some portion of the paternal succession of his deceased wife came to his hands between the time of the settlement and his death.

There is no evidence upon the subject either way, but there is certainly nothing very unreasonable in supposing that the parties to the submission designed to provide for such a contingency. At all events, I think that hypothesis is quite as reasonable as the supposition that the parties should have intended in 1846 to overturn a settlement made in 1836, against which no whisper of complaint was ever heard from any quarter, and which had been carried into full and complete execution by the most formal and solemn instruments known to the law. That settlement unquestionably was not a matter of difference between the parties, and it was only the matters in difference which were designed to be submitted, in order that litigation among members of the same family might be avoided. I am, therefore, of opinion that the arbitrators transcended their power in disturbing the settlement of 1836, and that their award for that reason is no bar to the relief prayed by the bill.

There is, moreover, another objection to this award, which may be and has been taken in this case, and which, in my judgment, is insuperable. The objection is not that the arbitrators proceeded irregularly or improperly in not giving notice to the parties of the times and places of their meeting, which, perhaps, though a ground for setting aside the award in a proper pro-

ceeding for the purpose, does not render it void. *Watson on Awards*, 119, 120. The objection referred to is, that the award does not make a final end and determination of all the matters submitted, and is, therefore, not binding upon the parties.

The arbitrators first find that at the death of George Calvert on the 28th of January, 1838, there was due from him to Rosalie Carter, wife of Charles H. Carter, the aggregate gross sum of $8039 51, and to Julia Stuart, wife of R. H. Stuart, the gross sum of $7426 69, and they further find "that payments .to a considerable amount have been made by the said Charles B. Calvert to the said Charles H. Carter and R. H. Stuart, respectively, on account of the several and respective sums of $8039 51, and $7426 69, since the death of the said George Calvert, for which he is entitled to a credit thereon." And they further award, "that a fair account be taken between the said parties of the balance due, if any, on account of the said respective sums of money, so far as aforesaid due by the said George Calvert at the time of his death, and that the same be paid forthwith to the said Charles H. and R. H. respectively."

The amount, therefore, to be paid by Mr. Charles B. Calvert, was to depend upon the result of an account to be taken thereafter ; by whom, and within what time, and upon what principles, is not stated. But a reservation of a future power by the arbitrators in their award, if it affect the whole of the award, will render the award totally void. This is the case even if the reserved power is to be exercised by the arbitrators themselves, as is conclusively shown in the cases referred to in *Watson on Awards, pages* 104 to 108, because the award itself should close up all the matters submitted, leaving nothing open to be settled by matter subsequent. This award, however, is more obnoxious to objection, because it does not appear by whom the account is to be taken, nor within what time, nor upon what principle. In fact, the great object of the parties, which was to ascertain the amounts due by a friendly reference of the matters in difference between them to mutual friends is defeated if, notwithstanding the award, an account is to be taken. It is no answer, as it seems to me, to say that there was no dispute

in fact between the parties in regard to the payments made by Mr. Charles B. Calvert to his brothers-in-law after the death of his father. That does not appear upon the face of the award itself, nor by reference to any documents or schedule appended to it, or in any way made a part of it. If the award had referred to the paper marked C. B. C., No. 4, and had directed the payments there mentioned to be credited against the sum awarded, so that the result would have depended upon a mere arithmetical calculation, the case might have been different, because that perhaps would have been reserving a mere ministerial and not a judicial question, and thus brought it within that class of cases referred to in *Watson on Awards*, 105, 106. But to take an account was certainly not to perform a mere ministerial act. It was, in fact, the very thing the arbitrators themselves were to do, and which the parties to the submission preferred to have done by them than by a resort to the ordinary judicial tribunals.

This is an objection which I think is fatal to the award, renders it totally void, and which, consequently, removes it from the way of the plaintiff in this case.

The only remaining question which I deem it proper in this case to notice, relates to the claim of the plaintiff to a portion of the damages paid by the Railroad Company for the right of way through certain lands. It appears by an extract from the deed executed by George Calvert, deceased, to the Baltimore and Ohio Railroad Company, dated the 4th of March, 1834, (which it is agreed shall be taken in lieu of the whole deed,) that for the consideration of eleven thousand dollars he conveyed to the Company all his interest, both at law and in equity, in and to two parcels of land as therein described, for the sole purpose, as expressed in the deed, of the passage and construction of the road through said lands, which lands, as appears by an agreement filed on the 17th instant, belonged in part to the children of Mrs. Calvert, and in part to George Calvert, the grantor, and the question raised is, whether the children of Mrs. Calvert, of whom the complainant's wife was one, are entitled, as against the representatives of George Calvert, to re-

18*

cover any portion of the money so paid to him by the Company, and if so, the agreement shows the proportion, or gives the *data* by which the amount may be ascertained.

My opinion is, that there can be no recovery against the representatives of Mr. George Calvert in respect of this money. Whatever may have been the intention and purpose of the parties to the deed, it is very certain that Mr. Calvert could only convey to the Company his own title to the land, and the deed, in fact, professes to convey nothing more. It does not attempt to convey the title of his children, and if it did, the materials are not before me by which I could confirm the contract, considering it a contract made for or on behalf of infants, and embraced within the provisions of the twelfth section of the act of 1785, ch. 72, which authorizes the court to confirm contracts made for or on behalf of infants, when, upon examination of all the circumstances, it shall appear for their interest and advantage to do so.

It will become necessary, I presume, to send the case to the Auditor, to state an account ascertaining the amount due from the defendant, Mr. Charles B. Calvert, as the legal representative of his father, or from him and his co-trustee, George H. Calvert, on account of the estate of the maternal grandmother of the deceased, Mrs. Carter, but as I understood in the course of the argument that some agreement would probably be made which would facilitate the account, I will not at this time pass an order.

The bill does not raise the question, and I do not propose at this time to express any opinion in reference to the trust created by the marriage settlement of the 13th of January, 1832.

———

J. M. CAMPBELL and R. JOHNSON, for Complainants.
THOMAS S. ALEXANDER, for Defendants.

———

[The parties not being able to make any agreement as indicated in the opinion, the Chancellor subsequently passed an order referring the cause to the Auditor to state the account as above decided. From this order the defendants appealed, and this appeal is still pending.]